1  Chant Yedalian, State Bar No. 222325
   (chant@chant.mobi)
2  CHANT & COMPANY
   A Professional Law Corporation
3  1010 N. Central Ave.
   Glendale, CA 91202
4  Phone: 877.574.7100
   Fax: 877.574.9411
5
   Counsel for Plaintiff
6  and the Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELA POTIKYAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JS DREAMS, INC. and CRISTCAT CALABASAS, INC. (individually and collectively doing business as JOHNNY ROCKETS - COMMONS AT CALABASAS), and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:13-cv-06237-JEM<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with (1) Declaration of Chant Yedalian and Exhibits 1-8; and (2) [Proposed] Order]<br><br>**HEARING**<br>Date: July 26, 2016<br>Time: 10:00 a.m.<br>Court Room: C (8th Floor)<br>Judge: Hon. John E. McDermott |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:13-cv-06237-JEM

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on July 26, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable John E. McDermott in Court Room C, located at 312 North Spring Street Los Angeles, CA 90012, Plaintiff and Class Representative Angela Potikyan will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure Rule 23 for an Order granting preliminary approval of the proposed class action settlement on the terms and conditions set forth in the class-wide Agreement Of Settlement And Release (the "Agreement" or "Settlement"), a copy of which is attached as Exhibit 5 to the Declaration of Chant Yedalian.

Plaintiff further moves the Court for an Order:

1. Approving the proposed notice to the Class, including the Summary Notice, Full Notice, and Claim Form attached as Exhibits 6-8, respectively, to the Declaration of Chant Yedalian;

2. Directing notice to be made to the Class as described in Exhibits 6-8 and [Proposed] Order;

3. Preliminarily approving the Settlement subject to final review by the Court;

4. Establishing deadlines for Class Members to submit a request for exclusion from the Settlement and to submit objections to the Settlement; and

5. Setting a final approval and fairness hearing on or about 110 days after the date that the Court grants preliminary approval of the Settlement.

This Motion is based upon this Notice of Motion and Motion, the Declarations, Exhibits and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

- 2 -

| | |
|---|---|
| DATED:  June 20, 2016 | CHANT & COMPANY<br>A Professional Law Corporation |
| | By:  /S/ – Chant Yedalian<br>        Chant Yedalian<br>Counsel For Plaintiff and the Class |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:13-cv-06237-JEM

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION……………………………...……………………………1

II. FACTUAL SUMMARY……………………………………………………..1

III. BANKRUPTCY MATTERS AND RELATED AMOUNTS………………...3

IV. THE SETTLEMENT…………………………………………………………3

V. THE TWO-STEP APPROVAL PROCESS…………………………………..5

VI. THE PRESUMPTION OF FAIRNESS………………………………………7

VII. THIS SETTLEMENT IS FAIR AND REASONABLE………………………8

VIII. PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED……...10

IX. REASONABLE ATTORNEY'S FEES AND COSTS WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT..11

X. A REASONABLE INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT…………………………………………………………..12

XI. CONCLUSION……...…………………………………………………………13

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                   Page(s)

*Armstrong v. Board of School Directors of the City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)……………………………………………………….6

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992)……………………………………………….........5-6

*Hammon v. Barry*
    752 F.Supp 1087 (D. D.C. 1990)……………….....................................................7

*Ingram v. The Coca-Cola Co.*
    200 F.R.D. 685 (N.D. Ga. 2001)………………………………………….............12

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)…………………………………………….......9

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)………………....................................................7

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)……………………………………….........9

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)………………...……………………………………..5-6, 7

*In re Portal Software, Inc. Sec. Litig.*
    2007 WL 1991529 (N.D. Cal. 2007)……………………………………...........6

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    834 F.2d 677 (7th Cir. 1987)………………………………………………………….7

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S. 306 (1950)……………………………………………………………….10

*Nat'l Rural Telecomm. Coop. v. DirecTV*
    221 F.R.D. 523 (C.D. Cal. 2004)…..……………………………….............7, 8

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982)………………………………………..…………...8, 9

*Priddy v. Edelman*
    883 F.2d 438 (6th Cir. 1989)…………….......................................................7

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009)…………………………………………………....12

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994)………………......................................................10

**Page(s)**

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
   79 F.R.D. 571 (E.D. Pa. 1978)..............................................................7

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003)...............................................................8-9

*Steinberg v. Carey*
   470 F.Supp. 471 (S.D. N.Y. 1979).......................................................7

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993)..................................................................8

*Van Vranken v. Atl. Richfield Co.*
   901 F.Supp. 294 (N.D. Cal. 1995)......................................................12

**Federal Statutes**

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")...................................................*passim*

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23(b)(3).............................................................................10

FRCP Rule 23(c)(2)(B) ........................................................................10

FRCP Rule 23(e)..........................................................................2, 6, 8

FRCP Rule 23(e)(1).............................................................................10

**Other Authorities**

*Newberg on Class Actions*, 4th Ed..................................................6-7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As this Court is well aware, this case has quite a history, including the filing of voluntary bankruptcy petitions by each of the two named defendants, Cristcat Calabasas, Inc. (which was filed on August 11, 2015) and JS Dreams, Inc. (which was filed on December 29, 2015).

Before either defendant filed for bankruptcy, Plaintiff successfully moved for and this Court granted class certification. Dkt. No. 52. That Class remains certified.

The Class Representative and Class Counsel have reached a Class settlement with Cristcat Calabasas, Inc., and the Bankruptcy Court has lifted the bankruptcy stay to allow for class settlement approval proceedings to proceed in this Court as between Plaintiff and the Class and Cristcat Calabasas, Inc. ("Cristcat"). Exhibit 1.

Accordingly, Plaintiff Angela Potikyan, as Class Representative for the Class, on behalf of herself and on behalf of the Class, hereby respectfully moves the Court for an Order granting preliminary approval of the proposed class action settlement.

## II. FACTUAL SUMMARY

This is a case where the Court has already certified a Class.

On December 2, 2014, this Court entered an Order granting Plaintiff's motion for Class Certification. Dkt. No. 52.

As part of its certification Order, the Court certified the following Class:

"All consumers who, at any time during the period January 18, 2012 to March 15, 2013, made a purchase or other transaction at the Johnny Rockets Calabasas Restaurant (located at 4799 Commons Way, Suite J, Calabasas, California 91302) using their credit card or debit card."

Dkt. No. 52, ¶ 8.

The Court also appointed Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel. Dkt. No. 52, ¶¶ 9-10.

The Court also approved a notice plan to the Class (Dkt. No. 59) and notice was provided to the Class and no Class member requested to be excluded from the Class during the exclusion period (Dkt. No. 62).

The Class Representative and Class Counsel persevered after the bankruptcy filing by Cristcat and successfully achieved a settlement.

### III. BANKRUPTCY MATTERS AND RELATED AMOUNTS

Among other things, the Class Representative and Class Counsel filed a proof of claim in the bankruptcy proceedings (Exhibit 2) and negotiated with both Cristcat and the Trustee to ensure that the Class' interest are best protected.

As a result of those efforts, the Trustee approved a claim on behalf of the Class Representative, the Class and Class Counsel in the amount of $37,370,881.68. Exhibit 3 at page 7 of 11.

The bankruptcy has yielded a total of $60,104.13 in cash receipts. Exhibit 4 at p. 2. After approved deductions and administrative expenses recommended by the Trustee, there will be a total of $35,667.02 to pay creditors if the plan is approved by the Bankruptcy Court. *Ibid.*

After a proposed payment of $1,633.26 to the Employment Development Department ("EDD") for its claim, there will remain $34,033.76. Exhibit 4 at page 3. The Trustee has approved and requested that this remaining amount be paid in response to the claim by the Class Representative, the Class and Class Counsel. *Ibid.*

A hearing is scheduled before the Bankruptcy Court on June 21, 2016 at 10:00 a.m. on the Chapter 7 Trustee's Final Report and Applications for Compensation.

### IV. THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the class-wide Agreement Of Settlement And Release

(the "Agreement" or "Settlement") attached as Exhibit 5 to the Declaration of Chant Yedalian.

As part of the Settlement, Cristcat, its counsel (Matthew E. Hess, Esq.) and Cristcat's majority shareholder (Robert Azinian) agreed that they would not assert any claim to the Pre-Petition Funds or Estate Funds concerning Cristcat's bankruptcy estate. Exhibit 5 at p. 2. Thus, they will have no right to the projected $34,033.76 from the bankruptcy proceedings.

In addition, on or about September 29, 2015, the Trustee abandoned the Restaurant, and Cristcat has been operating the Restaurant since then. Exhibit 5 at p 2.

Although the lease to the Restaurant originally expired in or about November 2015, the Restaurant remained open pursuant to landlord's request that the Restaurant remain open through the end of January 2016, until a new tenant is ready to take possession of the retail space occupied by the Restaurant. Exhibit 5 at p 2.

The Restaurant is expected to have earned approximately $40,000 in net income between September 29, 2015 and January 31, 2016 (the "Post-Abandonment Net Income"). Exhibit 5 at p 2.

After the Restaurant closes its doors, Cristcat will incur various one-time costs associated with closing the Restaurant (the "Closing Costs") which are estimated to be approximately $15,000. Once the Closing Costs are deducted from the Post-Abandonment Net Income, the remainder (the "Post-Abandonment Funds") will be available to pay for this Settlement. To the extent the Restaurant operates after January 31, 2016 [which it has been doing], 40% of all net income earned after January 31, 2016 will be added to, and considered to be part of, the Post-Abandonment Funds for purposes of this Settlement and shall be paid (to Class Counsel or to any settlement administrator approved by the District Court) by the 15th day of each month following the month it is earned; the remaining 60% of all

net income earned after January 31, 2016 shall be the property of Cristcat. Exhibit 5 at p 2.

Plaintiff and Class Counsel shall each have the right, but not the obligation, to request accountings and review of the Restaurant's financial records for each and every month that the Restaurant operates after January 31, 2016 as well as to all records concerning closing costs. Exhibit 5 at ¶ 2(d)(iv).

Cristcat will stipulate to the entry of a judgment ("Agreed Judgment") in the Lawsuit against Cristcat and in favor of Plaintiff and the Class in the total amount of $37,370,881.68. This total amount, and the constituent amounts that comprise it, are the same as those asserted in the Proof of Claim filed by Potikyan on December 28, 2015 (on behalf of herself and the Class) in the bankruptcy proceeding, Case No. 2:15-bk-22596-BR. Exhibit 5 at ¶ 2(d)(iii).

In return for the foregoing and except as to seek recovery from the Pre-Petition Funds, Estate Funds, and Post-Abandonment Funds, Plaintiff and the Class agree that they will not make any attempt to collect any further amounts concerning the Agreed Judgment from Defendant; will not seek to amend the Agreed Judgment to include additional judgment debtors; and will not attempt to collect any portion of the Agreed Judgment from Robert Azinian, Karine Azinian or Defendant's shareholders on an alter ego or any other theory of liability. Nothing herein precludes Plaintiff and the Class from pursuing any claims or rights against JS Dreams, Inc. Moreover, to the extent that any of Cristcat Calabasas, Inc.'s shareholders are also shareholders of, or have any other interest in, JS Dreams, Inc., this Settlement does not preclude Plaintiff or the Class from pursuing claims or rights against such shareholders or interest-holders for obligations or liabilities of JS Dreams, Inc. Exhibit 5 at ¶ 2(d)(v).

To be eligible for a cash payment from the Settlement, each Class member must timely submit a Claim Form. Class members shall be given at least 60 days from the first date of providing notice to the Class (or other time period approved by

the District Court), to submit a Claim Form. Each Claim Form must include the original or a copy of either (1) a customer receipt containing the expiration date of his or her credit or debit card showing that he or she made a transaction at the Restaurant at any time during the Class period, or (2) a credit or debit card statement (which will be encouraged to be in redacted form) showing that he or she made a transaction at the Restaurant at any time during the Class period. Each Class member may submit only one claim, regardless of whether they made one or more credit or debit card transactions during the Class period. Each Class member may receive up to $50 if they submit a valid and timely Claim Form but this amount will be subject to a *pro rata* reduction based upon the number of valid Claim Forms submitted by Class members and based upon the funds available to pay for claims, Class Counsel's fees and costs, service award to the Class Representative, class notice costs, and other fees and costs. Exhibit 5 at ¶ 17.

The Parties understand and acknowledge that Plaintiff's counsel, Chant Yedalian of Chant & Company A Professional Law Corporation, will file a motion with the District Court for an award of attorney's fees and costs to Class Counsel and for a service (incentive) award for the Class Representative. Defendant shall not object to Class Counsel's motion for such awards. The Parties agree that any attorney's fees or costs awarded to Class Counsel, and any service (incentive) award awarded to the Class Representative, are only to be paid from the Estate Funds and the Post-Abandonment Funds, and that Defendant shall have no additional obligation to pay additional attorneys' fees or costs to Plaintiff or Class Counsel, or any additional service (incentive) award to the Class Representative, once it has satisfied its obligation to pay the Post-Abandonment Funds. Exhibit 5 at ¶ 7.

## V. THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation. *Class Plaintiffs v. City of*

- 5 -

*Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court. FRCP Rule 23(e). This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections. This Motion concerns the first step.

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)). The purpose of this hearing is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Ibid.* "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'" *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529 at * 5 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314.

Thus, the preliminary approval of the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may

- 6 -

1  vary.  The court may find that the settlement proposal contains some merit, is
2  within the range of reasonableness required for a settlement offer, or is
3  presumptively valid subject only to any objections that may be raised at a final
4  hearing." *Newberg on Class Actions*, 4th Ed., § 11:26.

## VI.  THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation.  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

//

## VII. THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and preliminary approval should be granted. No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994) (holding that poor "financial condition" of company is sufficient basis for settlement approval).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625. Accordingly, the Ninth Circuit will not reverse a district court's

approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961.

This is not the usual case.

As this Court is aware, although Cristcat has claimed defenses to the lawsuit, and those alleged defenses are considerations for the Court in determining the fairness of a settlement, the overriding reality in this case is that there has already been a bankruptcy proceeding filed and we know the result of the cash assets available.

Due to the Class Representative's and Class Counsel's perseverance, they have been able to maximize what there is to recover from the assets in Cristcat's bankruptcy proceedings.

Moreover, the Class Representative and Class Counsel have been able to secure a commitment by Cristcat to pay at least approximately $25,000 of the $40,000 in the Restaurant's net income between September 29, 2015 and January 31, 2016, plus 40% of all net income earned after January 31, 2016. Exhibit 5 at p 2.

Under the circumstances, this is fair and reasonable and should be approved.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, *supra*, 688 F.2d at 625. Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher. *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

//

//

- 9 -
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:13-cv-06237-JEM

## VIII. PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Rule 23(e)(1) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances." Like Rule 23(e)(1), Rule 23(c)(2)(B) does not require actual notice or that a notice be actually received. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

This Court previously approved a notice plan consisting of publication in the LA Weekly and website notice and Plaintiff proposes a similar means of notice to the Class to inform them about this Settlement and their options as follows:

Plaintiff will cause to be published, on two occasions, a summary notice ("**Summary Notice**"), in the form shown in **Exhibit 6**, in the LA Weekly. A first publication shall be made within 30 days of the entry of this Order, and the second publication will be made between 21 and 28 days after the first publication. Each of the two publications shall be ¼ of the LA Weekly's standard page size.

The Summary Notice states a toll-free number which Class Members may use to call Class Counsel and also states the URL of a website, www.RestaurantReceiptLawsuit.com, which Class Members may visit for further information and obtain a a viewable and printable on-line long-form notice ("**Full Notice**"), which will be in the form shown in **Exhibit 7**. Beginning no later than 30 days after the Court's entry of this Order, and continuing until the last day on which Class members may request exclusion from the Class, Plaintiff's counsel shall make the Full Notice available to view and print at www.RestaurantReceiptLawsuit.com.

Class Members will have 60 days from the date the Summary Notice is first published in the LA Weekly to request to be excluded from the Class (the "**Opt-Out Deadline**"). To request exclusion from the Class, each Class Member who requests exclusion must include their respective name, address, telephone number, and signature on correspondence requesting that they be excluded as a Class Member from *Potikyan v. JS Dreams, Inc., et al.*, C.D. Cal. Case No. CV13-6237 JEM, and the correspondence must be mailed, and postmarked no later than the Opt-Out Deadline, to Class Counsel at the following address:

> Chant Yedalian, Esq.
> CHANT & COMPANY
> A Professional Law Corporation
> 1010 N. Central Ave.
> Glendale, CA 91202

Class Members will have 60 days from the date the Summary Notice is first published in the LA Weekly to submit a claim for payment by U.S. Postal Mail (the "**Claims Deadline**"). To submit a claim, Class Members must use the Claim Form in the form shown in **Exhibit 8** and it must be sent by postal mail to Class Counsel and postmarked by no later than the Claims Deadline or submitted online or by facsimile by the Claims Deadline. Beginning no later than 30 days after the Court's entry of its preliminary approval Order, and continuing until the Claims Deadline, Plaintiff's counsel shall make the Claim Form available to view and print at www.RestaurantReceiptLawsuit.com.

## IX. REASONABLE ATTORNEY'S FEES AND COSTS WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

This is a case that will likely never adequately compensate Class Counsel for all of his time devoted to this case.

Indeed, at the time of Cristcat's bankruptcy filing on August 11, 2015, Class Counsel had $258,313 in Class Counsel's attorney's fees, and $4,068.68 in costs.

Fees and costs have increased since that time and will continue to increase further through the approval process.

Typically, class counsel attorney's fees are deducted from funds recovered before any remaining funds are made available to any class members.  In this instance, however, due to the likely limited funds available, Class Counsel has voluntarily agreed to accept payment for fees after all valid and timely claims by Class members are paid.

Class Counsel will ask the Court to approve payment of up to $258,313 for attorney's fees plus up to $15,000 in costs.

## X. A REASONABLE INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will request, on behalf of the named Plaintiff, Angela Potikyan, an incentive (service) award of $5,000, to compensate Plaintiff for her services as the Class Representative.

"Incentive *awards* are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Ibid.*

In *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. In *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995), a $50,000 incentive award was approved for similar participation.

The requested enhancement award in the amount of $5,000 to the only Class Representative is modest and should be approved in connection with final approval.

## XI. CONCLUSION

The proposed class action Settlement is well within the range of reasonable settlements. It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel.

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement, sign and enter the proposed Order, and set a final approval hearing on or about 110 days after the date that the Court grants preliminary approval of the Settlement.

Respectfully submitted,

DATED: June 20, 2016                CHANT & COMPANY
                                    A Professional Law Corporation


                                    By: /S/ – Chant Yedalian
                                        Chant Yedalian
                                        Counsel For Plaintiff and the Class

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Court using the CM/ECF system which will send notification of such filing to the electronic service list for this case.

Dated: June 20, 2016                CHANT & COMPANY
                                    A Professional Law Corporation

                                    By: /S/ Chant Yedalian
                                        Chant Yedalian
- 13 -
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:13-cv-06237-JEM