Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiff
and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANGELA POTIKYAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JS DREAMS, INC. and CRISTCAT CALABASAS, INC. (individually and collectively doing business as JOHNNY ROCKETS - COMMONS AT CALABASAS), and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:13-cv-06237-JEM<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (WITH RESERVATION OF RIGHTS IN LIGHT OF CRISTCAT CALABASAS, INC.'S INADEQUATE DISTRIBUTION OF NET INCOME THAT IS REQUIRED BY THE SETTLEMENT)**<br><br>[Filed concurrently with (1) Declaration of Chant Yedalian and Exhibits 5, 9-12; and (2) [Proposed] Order and Judgment, lodged herewith]<br><br>**HEARING**<br>Date: November 17, 2016<br>Time: 10:00 a.m.<br>Court Room: C (8th Floor)<br>Judge: Hon. John E. McDermott |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on November 17, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable John E. McDermott in Court Room C, located at 312 North Spring Street Los Angeles, CA 90012, Plaintiff and Class Representative Angela Potikyan will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order and Judgment granting final approval of the proposed class action settlement on the terms and conditions set forth in the class-wide Agreement Of Settlement And Release (the "Agreement" or "Settlement")[1], but with a reservation of rights in light of Cristcat Calabasas, Inc.'s inadequate distribution of net income that is required by the Settlement.

Plaintiff further moves the Court for an Order:

1.     Finding that the Settlement is fair, adequate and reasonable and complies with Rule 23(e) of the Federal Rules of Civil Procedure;

2.     Finding that the notice of Settlement directed to the Class has been completed in conformity with the Court's orders;

3.     Binding all Class members who did not timely exclude themselves from the Settlement to the Agreement, including the release contained in paragraph 4 of the Agreement;

4.     Directing the Parties to effectuate all terms of the Agreement; and

5.     Retaining continuing jurisdiction: (i) to decide the Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative and make and enter an order(s) wherein the Court will determine the amount of attorney's fees and costs to award to Class Counsel and the amount of the incentive payment to award to the Class Representative, (ii) to interpret,

---

[1] A copy of the Settlement is attached as Exhibit 5 to the Declaration of Chant Yedalian.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (WITH RESERVATION OF RIGHTS)
Case No. 2:13-cv-06237-JEM

implement and enforce the Settlement, and all orders and judgment entered in connection therewith; and (iii) to address, decide and enforce the distribution of net income that is required by the Settlement, particularly in light of Cristcat Calabasas, Inc.'s untimely and inadequate distribution of net income to date and its ongoing refusal to comply with proper calculation and distribution requirements.

This Motion is based upon this Notice of Motion and Motion, the Declarations, Exhibits and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED:  October 16, 2016          CHANT & COMPANY
                                  A Professional Law Corporation


                                  By: ___/S/ – Chant Yedalian_____
                                          Chant Yedalian
                                  Counsel For Plaintiff and the Class

---

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (WITH RESERVATION OF RIGHTS)
Case No. 2:13-cv-06237-JEM

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION…………………………...…………………………1

II.  SUMMARY OF EVENTS UP TO PRELIMINARY APPROVAL…………1

III.  BANKRUPTCY MATTERS AND RELATED AMOUNTS………………...2

IV.  THE SETTLEMENT……………………………………………………3

V.  THE EXPECTED PROCEEDS FROM THE SETTLEMENT
    COMPARED TO THE AMOUNTS ACTUALLY PAID BY CRISTCAT,
    AND  CRISTCAT'S ONGOING REFUSAL TO COMPLY WITH THE
    SETTLEMENT……………………………………………………………5

    A.  March 23, 2015 through September 28, 2015 Period
        (Approximately $10,000 Per Month for 6 Month Period)……………5

    B.  September 29, 2015 through January 31, 2016 Period
        (Approximately $10,000 Per Month for 4 Month Period)……………5

    C.  Thus, After March 23, 2015 through January 31, 2016 Period
        (Approximately $10,000 Per Month for 10 Month Period)……………5

    D.  After January 31, 2016, the Settlement Required 40% Of Net
        Income Distribution But Most Of Cristcat's Net Income
        Purportedly Disappeared After January 31, 2016………………………5

VI.  NOTICE HAS BEEN PROVIDED TO CLASS MEMBERS IN
     CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE
     CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED
     TO BE HEARD…………………………………………………………...10

     A.  No Opt-Outs………………………………………………………..10

     B.  No Objections……………………………………………………...11

     C.  No Notice of Intention to Appear………………………………………11

     D.  Claims……………………………………………………………...11

VII.  THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO
      APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT...11

VIII.  THE TWO-STEP APPROVAL PROCESS…………………………………12

IX.  THE PRESUMPTION OF FAIRNESS…………………………………..12

X.  THIS SETTLEMENT IS FAIR AND REASONABLE……………………13

XI.  CONCLUSION……...…………………………………………………15

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>                                                      Page(s)

*Armstrong v. Board of School Directors of the City of Milwaukee*
616 F.2d 305 (7th Cir. 1980)……………………………………………………..12

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992)…………………………………………...........12

*Hammon v. Barry*
752 F.Supp 1087 (D. D.C. 1990)……………………….......................13

*In re Cendant Corp., Derivative Action Litigation*
232 F.Supp.2d 327 (D. N.J. 2002)…………………………………………...15

*In re Chicken Anti-Trust Litigation*
560 F.Supp 957 (N.D. Ga. 1980)………………………..........................12

*In re Heritage Bond Litigation*
2005 WL 1594403 (C.D. Cal. 2005)…………………………………………..15

*In re Omnivision Techs., Inc.*
559 F.Supp.2d 1036 (N.D. Cal. 2008)………………………………………11

*In re Pacific Enters. Sec. Litig.*
47 F.3d 373 (9th Cir. 1995)……………………...………………………12, 13

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
834 F.2d 677 (7th Cir. 1987)………………………………………………12

*Nat'l Rural Telecomm. Coop. v. DirecTV*
221 F.R.D. 523 (C.D. Cal. 2004)…..……………………………..11, 12, 13, 14

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco*
688 F.2d 615 (9th Cir. 1982)……………………………..……...13, 14, 15

*Priddy v. Edelman*
883 F.2d 438 (6th Cir. 1989)……………….......................................12

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
79 F.R.D. 571 (E.D. Pa. 1978)………………………...........................13

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)…………………….……...………13, 14

*Steinberg v. Carey*
470 F.Supp. 471 (S.D. N.Y. 1979)…………………………………........13

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)……………………….......................14

1

**<u>Federal Statutes</u>**                                                                                          **Page(s)**

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")………………………………………..…*passim*

**<u>Federal Rules of Civil Procedure ("FRCP")</u>**

FRCP Rule 23(e)……………………………….....…….......……….12, 13, 14

**<u>Other Authorities</u>**

*Newberg on Class Actions*, 4th Ed………..…………………………..….…12, 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On July 26, 2016, this Court entered an Order granting preliminary approval of the proposed class action settlement.  Dkt. No.144.  As part of the same Order, the Court approved a plan of notice to be directed to Class Members and set deadlines by which Class Members may opt-out, object or request to be heard at the final approval hearing.  Dkt. No. 144, ¶¶ 3-8.

As explained in further detail below, notice to Class Members has been provided in conformity with the Court's Orders, and no Class Member has opted-out, objected or requested to be heard at the final approval hearing.

Plaintiff, Angela Potikyan, on behalf of herself and on behalf of the Class, hereby respectfully moves the Court for an Order and Judgment granting final approval of the proposed class action Settlement, but with a reservation of rights to address, decide and enforce the distribution of net income that is required by the Settlement, particularly in light of Cristcat Calabasas, Inc.'s untimely and inadequate distribution of net income to date and its ongoing refusal to comply with proper calculation and distribution requirements.

## II.    SUMMARY OF EVENTS UP TO PRELIMINARY APPROVAL

As this Court is well aware, this case has quite a history, including the filing of voluntary bankruptcy petitions by each of the two named defendants, Cristcat Calabasas, Inc. (which was filed on August 11, 2015) and JS Dreams, Inc. (which was filed on December 29, 2015).

Before either defendant filed for bankruptcy, Plaintiff successfully moved for and this Court granted class certification.  Dkt. No. 52.  That Class remains certified.

As part of the Court's December 2, 2014 certification Order, the Court certified the following Class:

"All consumers who, at any time during the period January 18, 2012

to March 15, 2013, made a purchase or other transaction at the Johnny

- 1 -

1   Rockets Calabasas Restaurant (located at 4799 Commons Way, Suite

2   J, Calabasas, California 91302) using their credit card or debit card."

3   Dkt. No. 52, ¶ 8.

4   The Court also appointed Plaintiff as the Class Representative and Plaintiff's

5   Counsel as Class Counsel.  Dkt. No. 52, ¶¶ 9-10.

6   The Court also approved a notice plan to the Class (Dkt. No. 59) and notice

7   was provided to the Class and no Class member requested to be excluded from the

8   Class during the exclusion period (Dkt. No. 62).

9   The Class Representative and Class Counsel persevered after the bankruptcy

10  filing by Cristcat and successfully achieved a settlement with Cristcat Calabasas,

11  Inc. ("Cristcat"), and the Bankruptcy Court lifted the bankruptcy stay to allow for

12  class settlement approval proceedings to proceed in this Court as between Plaintiff

13  and the Class and Cristcat (Dkt. No. 141-1).

14  On June 20, 2016, in connection with a preliminary approval motion (Dkt.

15  No. 141), the proposed settlement was presented to this Court for preliminary

16  approval, and this Court granted the motion, approved a plan of notice to be directed

17  to Class Members and set deadlines by which Class Members may opt-out, object or

18  request to be heard at the final approval hearing (Dkt. No. 144, ¶¶ 3-8).

19  **III.   BANKRUPTCY MATTERS AND RELATED AMOUNTS**

20  Among other things, the Class Representative and Class Counsel filed a proof

21  of claim in the bankruptcy proceedings (Dkt. No. 142-2) and negotiated with both

22  Cristcat and the Trustee to ensure that the Class' interest are best protected.

23  As a result of those efforts, the Trustee approved a claim on behalf of the

24  Class Representative, the Class and Class Counsel in the amount of $37,370,881.68.

25  Dkt. No. 142-3 at page 7 of 11.

26  //

27  //

28  //

- 2 -

The bankruptcy yielded a total of $60,104.13 in cash receipts.  Dkt. No. 142-4 at p. 2.  After approved deductions and administrative expenses recommended by the Trustee, there remained a total of $35,667.02 to pay creditors.  *Ibid.*[2]

Thus, as a result of the funds retrieved in the bankruptcy proceedings, and the Class Representative's and Class Counsel's perseverance, a total of $35,667.02 in funds have been recovered and received and those funds are currently deposited and retained in an IOLTA account.

## IV.   THE SETTLEMENT

As this Court was previously informed, the Parties agreed to settle this matter upon the terms and conditions set forth in the class-wide Agreement Of Settlement And Release (the "Agreement" or "Settlement") which was previously provided to the Court (Dkt. No. 142-5)[3]

As part of the Settlement, Cristcat, its counsel (Matthew E. Hess, Esq.) and Cristcat's majority shareholder (Robert Azinian) agreed that they would not assert any claim to the Pre-Petition Funds or Estate Funds concerning Cristcat's bankruptcy estate.  Exhibit 5 at p. 2.  Thus, they have no right to the $35,667.02 recovered from the bankruptcy proceedings.

In addition, on or about September 29, 2015, the Trustee abandoned the Restaurant, and Cristcat has been operating the Restaurant since then.  Exhibit 5 at p. 2.

Although the lease to the Restaurant originally expired in or about November 2015, the Restaurant remained open pursuant to landlord's request that the Restaurant remain open through the end of January 2016, until a new tenant is ready to take possession of the retail space occupied by the Restaurant.  Exhibit 5 at p. 2.

---

[2] The Employment Development Department ("EDD") initially submitted a claim of $1,633.26 (Dkt. No. 142-4 at page 3), but later withdrew its claim.

[3] For the Court's convenience and ease of reference, another copy of the Agreement is attached as Exhibit 5 to the Declaration of Chant Yedalian.

As of the January 25, 2016 date stated in the Settlement Agreement, the Restaurant is expected to have earned approximately $40,000 in net income between September 29, 2015 and January 31, 2016 (the "Post-Abandonment Net Income"). Exhibit 5 at pp. 1-2.

After the Restaurant closes its doors, Cristcat will incur various one-time costs associated with closing the Restaurant (the "Closing Costs") which are estimated to be approximately $15,000.  Once the Closing Costs are deducted from the Post-Abandonment Net Income, the remainder (the "Post-Abandonment Funds") will be available to pay for this Settlement.  Exhibit 5 at p 2.

To the extent the Restaurant operates after January 31, 2016 [which it has been doing], 40% of all net income earned after January 31, 2016 will be added to, and considered to be part of, the Post-Abandonment Funds for purposes of this Settlement and shall be paid (to Class Counsel) by the 15th day of each month following the month it is earned; the remaining 60% of all net income earned after January 31, 2016 shall be the property of Cristcat.  Exhibit 5 at p 2.

Plaintiff and Class Counsel shall each have the right, but not the obligation, to request accountings and review of the Restaurant's financial records.  Exhibit 5 at ¶ 2(d)(iv).

Cristcat will stipulate to the entry of a judgment ("Agreed Judgment") in the Lawsuit against Cristcat and in favor of Plaintiff and the Class in the total amount of $37,370,881.68.  This total amount, and the constituent amounts that comprise it, are the same as those asserted in the Proof of Claim filed by Potikyan on December 28, 2015 (on behalf of herself and the Class) in the bankruptcy proceeding, Case No. 2:15-bk-22596-BR.   Exhibit 5 at ¶ 2(d)(iii).

In return for the foregoing and except as to seek recovery from the Pre-Petition Funds, Estate Funds, and Post-Abandonment Funds, Plaintiff and the Class agree that they will not make any attempt to collect any further amounts concerning the Agreed Judgment from Defendant; will not seek to amend the Agreed Judgment

to include additional judgment debtors; and will not attempt to collect any portion of the Agreed Judgment from Robert Azinian, Karine Azinian or Defendant's shareholders on an alter ego or any other theory of liability.  Exhibit 5 at ¶ 2(d)(v).

To be eligible for a cash payment of up to $50 from the Settlement, each Class member was required to timely submit a Claim Form which must include the original or a copy of either (1) a customer receipt containing the expiration date of his or her credit or debit card showing that he or she made a transaction at the Restaurant at any time during the Class period, or (2) a credit or debit card statement (which will be encouraged to be in redacted form) showing that he or she made a transaction at the Restaurant at any time during the Class period.  Exhibit 5 at ¶ 17.

As part of the Settlement, the Parties agreed and acknowledged that Class Counsel will file a motion with the District Court for an award of attorney's fees and costs to Class Counsel and for a service (incentive) award for the Class Representative, and that Defendant shall not object to Class Counsel's motion for such awards.  The Parties also agreed that any such attorney's fees or costs awarded to Class Counsel, and any service (incentive) award awarded to the Class Representative, are only to be paid from the Estate Funds and the Post-Abandonment Funds, and that Defendant shall have no additional obligation to pay additional attorneys' fees or costs to Plaintiff or Class Counsel, or any additional service (incentive) award to the Class Representative, once it has satisfied its obligation to pay the Post-Abandonment Funds.  Exhibit 5 at ¶ 7.

## V.   THE EXPECTED PROCEEDS FROM THE SETTLEMENT COMPARED TO THE AMOUNTS ACTUALLY PAID BY CRISTCAT, AND  CRISTCAT'S ONGOING REFUSAL TO COMPLY WITH THE SETTLEMENT

On March 23, 2015, Cristcat obtained a California state court order allowing it to take exclusive control of the Restaurant.  Exhibit 9.

**A.    March 23, 2015 through September 28, 2015 Period (Approximately $10,000 Per Month for 6 Month Period):**

After March 23, 2015 and through September 28, 2015 (an approximately 6 month period), the Restaurant made approximately $10,000 per month in net income.  We know this because the bankruptcy yielded a total of $60,104.13 for that period.

**B.    September 29, 2015 through January 31, 2016 Period (Approximately $10,000 Per Month for 4 Month Period):**

On or about September 29, 2015, the Trustee abandoned the Restaurant, and Cristcat has been operating the Restaurant since then.  Exhibit 5 at p. 2.

We also know that the Restaurant is expected to have earned approximately $40,000 in net income (for the 4 months) between September 29, 2015 and January 31, 2016.   Exhibit 5 at pp. 1-2.   This was based on the express terms of the Settlement which is dated January 25, 2016 (but was signed later than that).  Exhibit 5 at p. 1.

**C.    Thus, After March 23, 2015 through January 31, 2016 Period (Approximately $10,000 Per Month for 10 Month Period):**

Thus, based upon the subsections A and B, above, we know that after March 23, 2015 and through January 31, 2016 (a 10 month period) the Restaurant earned approximately $10,000 per month for that 10 month period under Cristcat.

**D.    After January 31, 2016, the Settlement Required 40% Of Net Income Distribution But Most Of Cristcat's Net Income Purportedly Disappeared After January 31, 2016**

Pursuant to the Settlement, to the extent the Restaurant operates after January 31, 2016 [which it has been doing], 40% of all net income earned after January 31, 2016 was supposed to be paid (to Class Counsel) by the 15th day of each month following the month it is earned.  Exhibit 5 at p. 2.

Cristcat did not timely make payments by the 15th day of each month for months following January 31, 2016.

Instead, on September 22, 2016, Cristcat's counsel, sent an email with a copy of a check he said would be sent that day.  The check is in the amount of $13,649.42.  Yedalian Decl. ¶ 7.

On September 22, 2016 payments were due and overdue for each of the seven (7) months of February 2016 through August 2016.  One would expect that with the Restaurant having made a net income of $10,000 per month for each of the preceding 10 months, that would have continued once the 40% of net income provision was triggered for the period after January 31, 2016.

If $10,000 per month in net income were made for each of the seven (7) months of February 2016 through August 2016, 40% of that would yield $4,000 per month, and that multiplied by 7 months would yield $28,000.  Instead, the $13,649.42 check represents less than half that amount.  What happened?

As shown in the emails that were sent by Class Counsel to Cristcat's counsel, documents have been requested (but not yet received) and a satisfactory explanation has not been provided.  Exhibit 10; Yedalian Decl. ¶¶ 4, 10.

Instead, the information provided so far demonstrates the following:

We know that pursuant to the terms of the Agreement dated January 25, 2016 (and signed thereafter), the Restaurant was expected to earn approximately $40,000 in net income for the 4 months of September 29, 2015 and January 31, 2016.  Yet, according to the summary "P&L" documents that Cristcat's counsel sent, the Restaurant purportedly made only **$2,876.24 in total net income (instead of $40,000) for those 4 months**.  Exhibit 10; Yedalian Decl. ¶¶ 4, 12.  This makes absolutely no sense and contradicts the Agreement.  This is also further questionable because whereas the Restaurant's rent was reported at the rate of $16,213.39 in October and November 2015, it thereafter dropped by $6,000 per month, a

1  substantial savings that should have resulted in higher net income, not grossly lower
2  net income.  Exhibit 10; Yedalian Decl. ¶¶ 4, 12.

3  　　　　There are many other items which are highly questionable and excessive.

4  　　　　For example, for the 11 month period of October 2015 to August 2016 there
5  are **$35,198.08 in accounting charges**.  These include something referenced as a
6  **$15,000 "RETAINER"** to Sadorian & Co. paid in **August 2016** and another
7  payment of **$12,998.08** to another entity on **1/30/16**.  Paying $35,198.08 for
8  accounting services for 11 months (specially for a company that purports to make
9  only $38,681.65 in net income for that 11 month time period), is absurd and grossly
10  excessive.  Exhibit 10; Yedalian Decl. ¶¶ 4, 14.

11  　　　　In stark comparison, the forensic accountant that the United States Trustee
12  hired (and whose employment the Bankruptcy Court approved) **charged $4,080 in**
13  **fees for all of its services through March 30, 2016**, which included, among other
14  things, review and accounting for the period of 2015, preparing and filing tax
15  returns for the year ending December 31, 2015, and many other tasks, including but
16  not limited to review of records for the years 2012, 2013 and 2014.  Exhibit 11.

17  　　　　When a court-approved forensic accountant charges $4,080 for all of these
18  tasks (which was already previously paid from the bankruptcy proceeds), how in the
19  world does the restaurant justify an **additional** expenditure of **$35,198.08 in**
20  **accounting charges for** purportedly the 11 month period of October 2015 to August
21  2016?  Of that amount, why is a **$15,000 "RETAINER"** to Sadorian & Co. paid in
22  **August 2016**, particularly when the Restaurant faces imminent closure?  No
23  satisfactory explanation has been provided.  Underlying documents have been
24  requested by Class Counsel, and Criscat's counsel has promised to provide them, but
25  has not yet done so.  Exhibit 10; Yedalian Decl. ¶¶ 4, 14-16.

26  　　　　Another example is unspecified "Repairs" in the amount of $31,673.51.  For a
27  company that was purportedly operating month to month and knew that it would

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (WITH RESERVATION OF RIGHTS)
Case No. 2:13-cv-06237-JEM

soon be out of business, why and how could it possibly incur $31,673.51 in repairs? Exhibit 10; Yedalian Decl. ¶¶ 4, 17.

Another example, is $6,000.00 in "Interest Expense."  It remains unexplained and unsupported.  Exhibit 10; Yedalian Decl. ¶¶ 4, 18.

Another example, is $66,000.00 for "Management" that is separate from payroll.   During an October 4, 2016 telephone conference, Cristcat's counsel conceded that the $66,000 payment was made to CCA Foods and that Robert Azinian owns CCA Foods.[4]  Exhibit 10; Yedalian Decl. ¶¶ 4, 19.  Cristcat's counsel thereafter claimed that CCA Foods provided two part time employees to the Restaurant.  Class Counsel then requested payroll records to reflect the purported employees and their purported time and rates for which they were purportedly paid. Cristcat's counsel said the records would be provided by October 11, 2016 but they have not been provided.  Exhibit 10; Yedalian Decl. ¶¶ 4, 19.

The so-called summary "P&L" documents also claim a separate payroll amount listed of $239,049.70 and then a separate "Payroll Expenses" of $30,030.92. Again, underlying records were requested and Criscat's counsel promised to provide them but they have not been provided.  Exhibit 10; Yedalian Decl. ¶¶ 4, 20.

Cristcat's counsel also agreed to provide the records for the Restaurant's March 2015 through September 28, 2015 period but those too have not been provided.  Exhibit 10; Yedalian Decl. ¶¶ 4, 21.

As a result, unless Cristcat resolves these issues, the Class Representative and Class Counsel, reserve their rights to have this Court address, decide and enforce the distribution of net income that is required by the Settlement through future Court proceedings.

Moreover, no payment or calculation has been received for the month of September 2016 and, given Cristcat's ongoing conduct, it is expected that October

---

[4] According to the California Secretary of State's website, CCA FOODS, INC. has an "FTB SUSPENDED" status.  Exhibit 12.

2016 will likewise be at issue.  According to Cristcat, October 2016 will be the last month that the Restaurant operates because the landlord will not allow the present month-to-month arrangement to continue.

## VI.   NOTICE HAS BEEN PROVIDED TO CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD

Pursuant to the Court-approved notice plan, notice was to be provided to Class Members in the following ways:

**Summary Notice**

The Court required a summary notice ("Summary Notice") to be published on two occasions in the LA Weekly, each in ¼ of the LA Weekly's standard page size. Dkt. No. 144, ¶ 3.

The first publication was made in the LA Weekly on August 11, 2016 and a second publication was made in the LA Weekly on September 1, 2016.  Yedalian Decl. ¶ 24.

**Full Notice and Settlement Website**

The Court also required the Court-approved Full Notice to be available to view and print at www.RestaurantReceiptLawsuit.com.  Dkt. No. 144, ¶ 3.

The settlement website went "live" on August 9, 2016 and has remained "live" since then, and has included, among other things, the Full Notice since that time. Yedalian Decl. ¶ 26.

### A.   No Opt-Outs

Class Members were provided until October 11, 2016 to opt-out.  Dkt. No. 144, ¶ 3.

No Class Member opted-out during the opt-out period.  Yedalian Decl. ¶ 28.

//

//

- 10 -

### B. No Objections

Class Members were provided until October 11, 2016 to object to the terms of the Settlement.  Dkt. No. 144, ¶ 5.

During the objection period, no Class Member objected to the Settlement. Yedalian Decl. ¶ 30.

### C. No Notice of Intention to Appear

In addition to allowing Class Members an opportunity to opt-out or object, Class Members were also provided an opportunity to request permission to appear and speak at the final approval hearing.  Dkt. No. 144, ¶ 8.

Class Members were provided until October 27, 2016 to make such a request. Dkt. No. 144, ¶ 8.

As demonstrated by the Court's records in this case, to date, no Class Member has filed a request for permission to appear or speak at the final approval hearing. Yedalian Decl. ¶ 33.

### D. Claims

Class Members were provided until October 11, 2016 to submit a claim.  Dkt. No. 144, ¶ 3.

Two Class Members submitted a claim during the claim period.  Yedalian Decl. ¶ 35.

## VII. THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT

The lack of any opt-outs, objections and requests to appear provides further support for the Settlement.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

"The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."   *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

## VIII.   THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court. FRCP Rule 23(e).  This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections.

This Court has already performed the first step, having granted preliminary approval of the proposed Settlement on July 26, 2016 (Dkt. No. 144), and this Motion concerns the second step.

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

## IX.    THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental*

- 12 -

*Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation.  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

## X.    THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and final approval should be granted.  No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d

615, 625 (9th Cir. 1982).   Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval."   *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994) (holding that poor "financial condition" of company is sufficient basis for settlement approval).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625.   The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.   As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.   Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625.   Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961.

This is not the usual case.

As this Court is aware, although Cristcat has claimed defenses to the lawsuit, and those alleged defenses are considerations for the Court in determining the fairness of a settlement, the overriding reality in this case is that there has already been a bankruptcy proceeding filed and we know the result of the cash assets available (notwithstanding the amount of purported expenses claimed by Cristcat for the period after January 31, 2016).

Due to the Class Representative's and Class Counsel's perseverance, they have been able to maximize what there is to recover from the assets in Cristcat's bankruptcy proceedings.

Moreover, the Class Representative and Class Counsel have been able to retrieve $25,000 of the $40,000 in the Restaurant's net income between September 29, 2015 and January 31, 2016, plus an obligation by Cristcat to pay 40% of all net income earned after January 31, 2016.  Exhibit 5 at p 2.

Under the circumstances, this is fair and reasonable and should be approved.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

## XI.   CONCLUSION

The proposed class action Settlement is fair, adequate and reasonable.  It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel.

It is respectfully requested that the Court grant final approval of the settlement and enter an order and judgment against Cristcat in the form proposed and submitted herewith.

The Class Representative and Class Counsel reserve their rights to have this Court address, decide and enforce the distribution of net income that is required by the Settlement through future Court proceedings.

//

//

//

1  They also respectfully request that the Court grant the Motion For Award Of

2  Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class

3  Representative (set for hearing concurrently with this instant Motion).

4

5  Respectfully submitted,

6

7  DATED:  October 17, 2016          CHANT & COMPANY
                                     A Professional Law Corporation
8

9

10  By: _/S/ – Chant Yedalian_____
                                     Chant Yedalian
11                                   Counsel For Plaintiff and the Class

12

13  **CERTIFICATE OF SERVICE**

14  I hereby certify that I electronically filed the foregoing with the Court using

15  the CM/ECF system which will send notification of such filing to the electronic

16  service list for this case.

17

18  Dated:  October 17, 2016          CHANT & COMPANY
                                      A Professional Law Corporation
19

20  By: _/S/  Chant Yedalian_____

21  Chant Yedalian

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (WITH RESERVATION OF RIGHTS)
Case No. 2:13-cv-06237-JEM